FILED
2020 Jun-16  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CANDACE HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **RENEAU, INC., d/b/a Subway,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

**STATEMENT OF JURISDICTION**

1.      The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority.  This is a suit authorized and instituted pursuant to 42 U.S.C. Section 2000e, et seq , known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and 42 U.S.C. Section 1981.

2.      This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above.  This Court also has original jurisdiction, pursuant to 28 U.S.C. §1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and § 1981, providing for injunctive and other relief against discrimination.

3.      Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Shelby County located in this judicial district.

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action, as

1

required under Title VII.

## STATEMENT OF THE PARTIES

5.      Plaintiff Candace Harris (hereinafter referred to as "Plaintiff" or "Harris") is an African-American individual over the age of nineteen (19) years.  She is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named defendant, Reneau, Inc.

6.      Defendant Reneau, Inc. (hereinafter "Defendant", "Reneau" or "Subway"), is an entity subject to suit under Title VII that owns and operates food businesses, including several Subway locations**.** At all times relevant herein, Reneau was Plaintiff's employer.

## STATEMENT OF THE FACTS

7.      Plaintiff is an African American woman.

8.      Plaintiff began her employment with Reneau in or near September, 2018.  Plaintiff worked at Reneau's Subway location in Helena, AL.

9.      Reneau is a family owned business that owns and operates several Subway locations. Upon information and belief, some of those Subways include locations in Helena, AL; Pelham, AL; Calera, AL; Montevallo, AL; and Alabaster, AL.

10.     Plaintiff was the Assistant Manager of the Helena location in January of 2019 when the store manager quit.  The store manager who quit was an African American woman.

11.     Upon information and belief, the previous manager quit because she felt as though she was being treated differently and less favorably as compared to other white managers of Subway because she was African American.

12.     After the previous manager quit, Plaintiff was tapped by Reneau to begin acting as

the Manager of the Helena location.  Plaintiff did not receive any additional income or official promotion.  Rather, Plaintiff was given all of the duties of the store manager.  However, Plaintiff gladly assumed the role and immediately began operating the Subway successfully so that it did not miss a beat after the store manager quit.

13.     Plaintiff was promised that the manager position was going to her by one of the co-owners, Scott Reneau.  Further, Plaintiff's pay was increased by approximately $3.00 per hour to reflect her new position, roles and responsibilities.

14.     A week or two after Plaintiff assumed the manager role, she was introduced to a white female named Vicky.  Plaintiff was instructed to train Vicky to become her "Closing Manager" which would have made Vicky the assistant manager.  Plaintiff fully expected Vicky to become her new assistant manager.  Particularly, because Vicky did not have the fast food managerial experience that Plaintiff had and because Plaintiff had already been told that she would be store manager.

15.     Plaintiff trained Vicky every day for over a month. And, as usual, Plaintiff would prepare the weekly schedule each week to be posted on or near Sundays so every employee, including management, knew their schedule for the week.

16.     In mid-February, 2019, Plaintiff was shocked when she saw that her pay increase had been reverted back to $7.25/hr.  Plaintiff immediately called Wendy Reneau, the owner and asked whether she had done something wrong.  Wendy told Plaintiff that she made the decision to revert Plaintiff's pay because she had never agreed with Scott or given him the authorization to change Plaintiff's pay.  Wendy went on to tell Plaintiff that she was the only person that could make pay-related decisions because it was her company.

17.     Plaintiff was shocked by this adverse employment action by Wendy.  Plaintiff had

risen to the occasion and was successfully running the store ever since the previous manager quit.

Plaintiff asked Wendy if she had done anything wrong because she felt she was being punished for

something.  Wendy told Plaintiff that she had done nothing wrong and it was just a decision she

decided to make.  Plaintiff asked whether anyone else had their pay decreased because if it was only

her, then she believed it could be discriminatory which would validate the previous manager's

concerns.  However, Wendy did not provide a response to Plaintiff.

18.     A couple of days later, although she was still upset from the pay issue, Plaintiff

continued to perform her job to the best of her ability.  Per usual, Plaintiff posted the weekly

schedule.  The following day, Plaintiff went to work to open the store as she normally did.  However,

Plaintiff immediately noticed that there were people in the store when she arrived.  This was unusual.

When Plaintiff entered the store she saw Vicky speaking with the owner, Wendy Reneau.  Plaintiff

headed to the back of the store to double check the schedule to make sure her days had not been

confused.  When Plaintiff attempted to check the schedule, she noticed it had been removed.

19.     Plaintiff asked Wendy about the schedule.  Wendy told Plaintiff that Vicky was going

to be taking over the store as the manager.  Plaintiff immediately asked why because she had already

been promised the store manager position and assumed the title belonged to her; she had been

working successfully as the manager for the last month; and she had been training Vicky as her

assistant manager at the same time.  Wendy responded that she had removed Plaintiff from the

schedule but wanted to call Plaintiff to discuss her future with the company. Plaintiff asked Wendy

whether this had anything to do with her complaining about her pay being decreased.  Wendy did

not respond.  Instead, she asked Plaintiff to go home and she would call her later.

20.     For the second time in a matter of days, Plaintiff was confused, hurt, humiliated and

4

embarrassed.  Since working for the company, Plaintiff never had any issues or disciplinary actions whatsoever.  Plaintiff performed her job well. Plaintiff did not deserve to be treated as Reneau treated her.

21.     Plaintiff did not hear anything for 1-2 weeks.  She continually called Wendy but the call was always sent to voicemail.  So she called Scott.  Scott told Plaintiff that she would need to speak with Wendy.  She tried Wendy again - still no answer or call back.  So, on pay day Plaintiff went to pick up her check from the Subway store.  When she arrived, Vicky was working at the store as the manager. Plaintiff again expressed her confusion as to what had taken place concerning her employment.  Vicky told Plaintiff that she was just as shocked as she was when Wendy approached her to offer her the store manager position.  Vicky claimed that she asked Wendy "what about Candace [Plaintiff]?"  However, Wendy informed Plaintiff that she simply did not want a black person running her Helena store again.  Wendy thought it would be bad for business to have two African American managers running the store back to back.  She feared it would hurt business at the Helena location because Helena, AL is by far majority white.   As such, she felt Vicky should be manager.

22.     Plaintiff was horrified after hearing this from Vicky.  However, it only validated the ugly truth - Plaintiff was terminated not for anything she had done but because she was the wrong color.   It now made sense why Wendy could not give Plaintiff a straight answer when she complained about the pay decrease.

23.     Plaintiff attempted to file for unemployment compensation but the company blocked her unemployment benefits to which she was entitled in an additional act of retaliation.  Based on what she went through, Plaintiff filed an EEOC charge of discrimination (420-2019-01264).  In

February of 2020, the EEOC found "there is reason to believe that the violations have occurred." The EEOC then attempted conciliation but their efforts were unsuccessful because the company failed to respond. The instant lawsuit followed.

### FIRST CAUSE OF ACTION
### Racial Discrimination - Failure to Promote
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

24.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

25.     Plaintiff is an African American female.

26.     Plaintiff has been discriminated against and treated differently because of her race.

27.     More specifically, after the previous manager had quit, Plaintiff expressed her interest in the position and was promised the position.  In fact, she was given a pay raise to reflect her new role.

28.     Plaintiff began working as the store manager and was soon told that she needed to train Vicky, a white female, to become her new closing manager which is also the assistant manager.

29.     Plaintiff was qualified for the position, including having previous fast food managerial experience.  Vicky had no managerial experience. Despite this, Plaintiff was ambushed when she was told that Vicky would be store manager and not her.  Vicky had never told Plaintiff that she was interested in the store manager position.  Plaintiff's removal from the schedule was a complete surprise.

30.     A couple of weeks later when Plaintiff came to pick up her check, Vicky informed Plaintiff that the real reason she had been terminated was because Vicky did not want another African American store manager in Helena because it could be bad for business since the last

6

manager was also black.

31.     These acts discussed throughout this Complaint affected the terms, conditions and/or privileges of Plaintiff's employment when she was forced to accept a pay decrease and was then removed from the schedule for no reason.

32.     Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

33.     As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SECOND AND THIRD CAUSES OF ACTION**
**Count II - Retaliation**
**Count III - Retaliatory Discharge**
**under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981**

34.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

35.     About a month after Plaintiff had been given a raise and responsibilities of store manager, Plaintiff's pay was suddenly decreased to her initial pay rate prior to her assuming the manager role.

36.     Plaintiff immediately complained to Wendy and asked whether she was the only manager to have her pay decreased.  Plaintiff asked this because she believed it was likely an act of discrimination.  When Wendy did not respond to Plaintiff's question, Plaintiff immediately knew that she was likely being discriminated against.  However, Plaintiff decided to continue working ad

to raise the pay issue again after she had proven herself as a capable manager for a little while longer.

37.      However, a couple of days after Plaintiff complained about the pay decrease, Plaintiff went to open the store and discovered Wendy and Vicky already at the store.  Plaintiff was confused and immediately went to check the schedule she had posted to make sure she did not make a mistake. However, when she looked for the schedule she saw that it had been removed.

38.      Wendy then told Plaintiff that she made the decision to remove her from the schedule and that Vicky was going to be the new store manager.

39.      Plaintiff immediately asked whether this happened because she complained about her pay being decreased a couple of days prior and she fully believed this to be an act of retaliation. Wendy did not respond to that question and instead told Plaintiff that she would call her in a few days. She then instructed Plaintiff to leave the store.

40.      Days passed and no word from Wendy.  Plaintiff attempted to call her multiple times. Plaintiff then called Scott Reneau.  Scott told Plaintiff that Wendy, his mother, had made the decision to fire her so Plaintiff needed to speak with her.  Plaintiff tried to call Wendy again but to no avail.  Scott claimed that he would tell Wendy to call Plaintiff but Wendy never did.

41.      Then, when Plaintiff went to pick up her check, Vicky informed Plaintiff that the real reason she was terminated was because Wendy did not want another black person in charge of her Helena store.  She was worried it would be bad for business to have another black person running the store which was located in a predominantly white city. Vicky claimed that she felt uncomfortable after Wendy had made her aware of the real reason.

42.      Plaintiff filed an EEOC charge against Reneau as a result of what she experienced.

43.      When Plaintiff filed for unemployment, Reneau blocked Plaintiff from receiving her

benefits in an additional and ongoing act of retaliation.

44.     As a result of Reneau's discriminatory and retaliatory acts, Plaintiff faced extreme financial difficulties trying to take care of her family with no form of income up to and including, losing her home.

45.     Defendant, through the conduct of their agents, have violated Plaintiff's rights under Title VII and Section 1981.

46.     As a result of Defendants' actions, Plaintiff  has suffered harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.     Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant is violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2.     Grant Plaintiff a permanent injunction enjoining Defendant, their agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991; and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back-pay (plus interest), reinstatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
## ON ALL ISSUES TRIABLE BY JURY

Respectfully Submitted,

/s/ Sidney Jackson

Samuel Fisher
Sidney Jackson
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher
& Goldfarb,  LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sf@wigginschilds.com
sjackson@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent  by Certified Mail to the Following:**

**RENEAU, INC.**
**c/o SCOTT M. RENEAU**
752 MAIN ST
MONTEVALLO, AL 35115